Your Honor, this case of the afternoon, 2-07-01-05, Chief of the State of Illinois v. Terrence Taylor, on behalf of the Appellant, Jack Hildebrand, on behalf of the Appellant, Mr. J. Paul Hoffman. Mr. Hildebrand? Thank you. May it please the Court, my name is Jack Hildebrand and I am representing Mr. Taylor in this case. Well, the main evidence is the videotape in this case, and the main issue is whether that videotape is reliable enough to use in a criminal prosecution. The State did not have any witness that could testify with personal knowledge that the videotape portrayed what it was purported to show. When this situation occurs, a foundation can still be laid if the State in this case could show that it satisfied the requirements of the silent witness rule, which allows this type of evidence to come in even though there is not a witness with personal knowledge. Do you know from the record how this videotape came to be in the form that it was in? No, there is nothing, except there is a statement in a document that was not presented at trial, or admitted at trial, saying something about Detective Annan transferring it. The what? Detective Annan transferring the images to the tape, but did it say how they were transferred? So in its raw form, it was what? When he plugged something in and looked at it, was it recorded to something? Well, what I can tell from it is it's recorded on a DVR hard drive. It's digital. And I don't know whether if when he sets up a monitor, I can't tell from the record whether when he looks at the monitor, he can see what the camera sees without it being actually recording. And then when somebody would walk in front of it, then it would start recording. I don't know how that worked. I didn't think they gave us anything that would indicate how that worked. So that would just be guessing. And once a defendant made that allegation that he was objecting on the basis of an alteration, the state was required to rebut that, and they could not rebut that in this case. Detective Annan testified that he was not familiar with the equipment, and it was his first time really using the equipment. And that certainly isn't enough evidence to show that this tape was reliable. The testimony basically showed that this tape shouldn't come in. And he did give an explanation, or he attempted to give an explanation about the 28-second gap. And he did this by stating that it was his guess that maybe the person squatted down behind the counter for 30 seconds and then came back up and triggered the recording again. That does not match up with the... Arguing, even if you assume that based on the sign of witness that the tape, the foundation was not proper to admit the tape into evidence, was the evidence without the tape not sufficient for finding the guilty? Yes. Why? Well, because then the state would be left with the testimony. Well, the only direct testimony we have that came from the defendant rather than... Did you have two confessions, basically, from the defendant? The one written one. And what he stated... Was there an oral statement? Pardon me? Wasn't there one oral statement and one written statement? There was an oral statement according to the people that worked at the school who had an interview with him after this started. But, like I wanted to say to this Court, that there was really... The only direct evidence that we know of coming from the defendant without him testifying was this written statement. And the written statement didn't say anything about the December 10th theft. He only admitted to a theft of like $400 in May and $500 in July, which was way before this ever occurred. So, he didn't really give a confession to this particular crime. And so, we're left with the witness... How much was it on this day? Pardon me? How much was it on this day allegedly? According to Mr. Marsh, it was $20. $10? No, $20. And that creates a problem also because Paul McCartney testified... He only testified that the defendant told him that he had taken money. And that could have been money from we don't know. There's no explanation whether the defendant said from the December 10th or from any particular point. The testimony of Paul McCartney then wasn't sufficient. And if we look at the testimony of Detective Anden, he really didn't state that the defendant confessed to him that he took the money on December 10th. That was more of an answering yes to a leading question by the prosecutor, which simply cannot be sufficient enough to convict the defendant on a reasonable doubt. So, we're basically left with what Detective Anden said, what Ms. Hobson wrote in her memo, which got into court, stating that the defendant said he did this on the 10th and had taken $10 and that he used it for gas. So, that doesn't match up to the evidence either because $20 was taken. So, any statements that were given here is really confusing and really wasn't cemented down for this trial. And Ms. Hobson's statement about the gas also doesn't match up with the evidence showing that the defendant took $20 purportedly on that date for gas, when he's only admitted to taking $400 and $500 on another occasion. That's not really gas money. That doesn't really match up to a statement that the defendant would make that I took it for gas. If in fact... Could he make a reasonable inference that he said if I took money and I took it for gas, that could the court make a reasonable inference that he must have taken the $10 or the $20? Yes. I mean, that would be a legitimate amount if he, in fact, did say that. And this was basically hearsay anyway. On the sheet of paper, the paper was hearsay. So, that's not really very reliable in and of itself. So, the state... When a defendant makes a confession, isn't that an exception to hearsay? Or an admission? Isn't that an exception to hearsay? Yes. If a person testifies about it, yes. The... Whether or not that... Whether or not Ms. Hobson had to come in or not really doesn't matter because... This piece of paper actually helps the defendant more than it helps the prosecution because it establishes a conflict with the testimony and with what the defendant was alleged to have done. And so, the difference between the $10 versus $20 and the gas money and the problems that those things create that the defendant could argue did not show were not reliable enough either. So, we have all... We have just this tiny little evidence that he actually confessed to doing this. That would be the only evidence left. And that is just this one piece of paper stating that he told the people at the school that he had taken $10. And... He said he admitted to taking some money, right? On Mr. McCogney's statement? Yes. Yes, I think... Well, McCogney testified that he was told by the defendant that he took money, but he did not say that the defendant told him he took money on December 10th. So, we're not really sure what McCogney was testifying about when he made that statement, when he gave that testimony. What do you think the proper foundation would consist of? It should have been... The state should have brought in the DVR and the monitor and shown it right off the DVR. And if the judge had sustained the defendant's objections to this, it would eventually have gotten there. Would the DVR still have shown the last 30-second, 20-second lapse in time? I don't know. So, you're saying that these types of tape recordings are only going to be admissible if they're in their original form, that they can never be copied? No, unless there's some kind of allegation that the evidence had been tampered with or changed or altered. And in this case, there was that. Defense counsel said this tape was altered. And when you make that allegation, then yes, you're required to do more. You make that allegation, but based on what? There's a gap of 28 seconds in the tape. Yeah, but the gap in the tape was... Didn't you originally argue or didn't the police officer explain that he felt that the gap in the tape was when the guy went down behind the desk and the motion detector went back on? But your timer was going the whole time. It would never change, but it just showed like a 20-second gap, correct? It showed a jump. A jump, okay. It showed a 28-second jump. And the explanation about going out of view of the camera just doesn't match what the videotape shows. It stopped while he was in this area where he's supposed to be filmed. And then when it starts up again. But the DVR would then show the same thing, wouldn't it? Well, I wouldn't know because we'd have to look at that. But if that's the original, it probably has everything on it. I mean, there's a transfer there. We don't know how it was transferred. It had to be some kind of software. We don't know what kind of software it was. It could have been a software problem. It could have been because Detective Anand didn't have experience with transferring this stuff. And just the fact that there was a couple of stopping starts there at the end indicates that this was just somebody not knowing how to operate the software if software is used to transfer it. All the defense has to do is say there's a gap. Yes. There's a gap. Yes. And then that means the State has to bring in the original DVR, the original recording device, the camera that's attached to the wall has to be brought in in order for the recording to be admissible? Yes. If there's no witness that can testify personally and the State brings in a tape to prosecute somebody and there's a gap in the middle of it, that's just like a red flag for, well, it was altered. Or somebody was manipulating it. Wouldn't it be enough to ask the witness that has the tape to say, is this tape, is it truly an accurate portray what you saw on the monitor? Isn't that enough? But the State never asked that question. Asked it. I'm asking you, is that enough? I would say no. If I were the judge, I would have looked for evidence that showed what they wanted to show rather than a chopped up version. And it's just as easy to bring. Does it go to the weight then, not admissibility? Not until the judge makes a determination. Right, until we're back to the same spot. Yes. Your position is the defendant says there's a gap in the tape. Right. That means the State has to bring in the original reporting. Unless they rebut it. Right then and there. So what happens if the State brings in the original reporting and there's a gap in that, too? Then that's another issue that the judge would have to face. That would go to weight, as Justice Jordansen said, correct? No. Do you have a question? No? Okay. It wouldn't go to weight because it doesn't go to the weight until a legal foundation has been established. And that's a question of law. It's not a question of we have relevant evidence, but am I going to allow the jury to see it because it's prejudicial or for whatever reason? So if the judge asks the operator why is there a gap, he gives an explanation, and the judge lets it in, that goes to weight, correct? No. When you have evidence that can be manipulated or changed, like drugs, you know, the drugs are in a black bag and by the time they get to trial they're in a different color bag. Finish your talk. Okay. When you have that type of evidence, you have to rebut any kind of attack on the foundation that this tape had been manipulated or these drugs had been manipulated or played with or changed or something. Once that allegation is made, and that was made in this case, that the evidence that the state was showing to the judge was altered. And the verdict was changed? Yes. Okay. And they attempted to rebut it, but they just had Detective Vanden say, well, I don't know how it works. And I can give you a guess how it may have happened. Well, he went down, and then 30 seconds later he came up. Well, it was 28 seconds later. So if the 30 seconds, if that was actually what was said, then that didn't even match up. And, of course, the man was standing right there in front of it when it stopped and when it started. So that does not coincide with Detective Vanden's testimony about how this worked. In a breathalyzer situation, there were cases a long time ago about, you know, instead of just you're calibrating or doing whatever, you know, the department comes in and checks it, defense attorneys would say, well, the operator has to know how it works. And, clearly, we have case law now that says they don't have to know how it works. It just has to be certified at certain intervals. Why does the police officer's explanation of what he believed happened any different than that? Well, because there was a problem with the tape. And there was a problem that you could see. Where with a breathalyzer, there's nothing really to see except a little sheet of paper with a number on it. Well, maybe all you have to do is just push a button. But in this case, we have evidence that shows there was a gap. And the defendant complained about that and objected to it, saying that the evidence was obviously altered unless the state could show otherwise. And if the judge sustained that, the state would have then gotten enough evidence to rebut that. And if the defendant objected again for some other reason and the judge sustained that, the state would probably say, well, let's just go get the DVR. So the judge could have brought that to the point where the state goes, well, we'll just bring in the DVR and monitor. But what's the foundation for the DVR? How do we know it hasn't been altered? I mean, you know, if you've got a foundation problem, what foundation are we going to lay for the DVR? The same foundation that was requested for the videotape. Whether that was working properly, whether it was an accurate recording, all the same things that are listed in the silent witness report. But nobody simultaneously watching it, they come back and they check it and find that this has happened, correct? And they don't have to show this machine was working properly and all those other factors. There's many of them. But in that situation, if the DVR didn't have a gap in it, the defendant would have had no cause to object on the basis that this thing had been altered. So it would have come in. There would be the end of that at the end of it. All right, counsel, you have time for rebuttal. Thank you. Mr. Hoffman. May it please the court. Counsel, I am Jerry Hoffman of the appellate prosecutor's office. And in this case, it's my pleasure to represent the people of the state of Illinois before the Senate and the court. I don't know where to begin. There are several things. I'll begin with the factual discrepancy I have going back to Justice Strogatz's question. Indeed, we do know that this is the tape, that this is a perfect transcription of the digital recording. At page 15 to 16 of the record, Detective Annan says he first viewed the tape after – I believe it was after, but he first viewed the tape when he had been told that money was again taken. Then after he views the tape, he views it again with Mr. Marsh, the dean of students, and Mr. McCogney, the director of the building and grounds. At page 25 of the record, Annan says the recording viewed with them on 12-12 is the recording we just watched. At page 37, Annan says the recording is not altered in any way. And then we have in the common law record at page 31 his recount that he had made a copy of the hard drive, the digital recording, onto the tape. He put it into his desk and he locked his desk, locked it there until it could be taken to the evidence vault. So it's quite clear that there was sufficient testimony that what you saw, including that gap, is what was on the original recording. So how do you explain the gap? I can only explain it as Detective Annan did, that for some reason there was stillness or the camera was not picking up motion. And therefore, as he testified, when the camera does not pick up motion, it will cease recording until it again finds motion. Which is when, if you watch the very short tape, if you haven't already, when he's down, you see him grab the bag, you see him for a brief moment, then he goes down, then the tape stops, and then it starts. When it starts again, there's that 28-second gap. When it starts again, what do you see? You see him get up and walk from the room. So you never see a different individual before or after that gap? No, it's always the same individual. This brings me again. All right. So then in order to figure out how this gap occurs, does the police officer have to do a series of controlled trials or controlled, you know, what stops the motion? Does he have to go out there and go through hoops to figure out what happened? Or does he just get to, I guess this is what happened? Well, I believe that that matter is not a foundational question. I believe that that goes to the weight of the evidence. If the judge wants to believe that his explanation was not there and the judge said that he accepted that explanation, I believe that's at 110 to 111 of the record, he specifically said that he, you know, he accepted that it had been explained. This brings me back to a question that Judge Jorgensen, another question Justice Jorgensen indicated earlier, which is what is the foundation? Now, in their brief, the defendants argued that it's this silent witness test would be the five questions. The evidence is evidence as to the capability of the device, competency of the operator, proper operation of the device, preservation of the recording, which is evidence I just went to before, and the ID of the speakers. However, if you look at both Valen, which they cite now, and People v. Smith, which they also cite now, I think at page 14 of the brief, and was the exclusive case relied upon below, this is not necessarily the only test. If you look at Valen, and if you look at, let me see, page 899 of Valen, they say, absent the silent witness theory, sufficient foundation for the admission of a videotape is laid when a witness with personal knowledge of the filmed object testifies that the film is an accurate portrayal of what it purports to show. Smith says very much the same thing at pages 674 through 675. A video brought, I'm sorry, foundation for a motion picture is sufficient when the witness with personal knowledge of the filmed object testifies that the film accurately portrays what it purports to show. How does the detective know that here? He wasn't there. He can say it's the room, but that's it. Look at Smith. Smith's a very interesting case. Smith is a case in which there was a drug deal. The police were watching him. In addition to that, they had a video camera in the car, and they had an audio camera in the car. Smith explains, when you have the video camera and an audio camera, in order for there to be sufficient foundation, there has to be sufficient foundation for video, which is what I just said, that someone says it shows what it purports to show, and the audio, and the audio is the portion where they go through these five factors. Now here, if you look at the testimony, it's undoubted that there was testimony that it showed what it was designed to show. McCartney, who hired the defendant, testified at page 69 that that's the defendant in that video. He also testified, that's Mr. Marsh's desk, that's Mr. Marsh's office. Marsh testified from 54 to 57, that's my office, that's my desk, and he got down and he described the various things on the desk, and he said that's the drawer, that's the case in his hand that I keep the money in. So all these things were testified to under the standard used in Smith for video, and Smith bifurcates it. They use this video standard, then they go on to the audio standard. So I'm not altogether certain that this five-factor test, which we still contend has been met, is the appropriate test for foundation in this instance. Isn't it Smith, there's someone who was also watching the transaction? Yes, there was, but that was not in an empty room with the defendant. But the... It's a significant difference. It's not demonstrative evidence. It's substantive evidence. There was an officer who also testified. And if you look at Smith, they first say the standard is if there was evidence, if there was testimony saying that it recognizes what it purports to recognize, what it says. In Smith, it wasn't the tape that was used as glass, which is why they... You know what? I take it back. I am confusing... Well... Let's see. Now I'm confusing Smith perhaps with the facts of Smith. The facts of Smith were not... I'm sorry, were not the valent, and it was the one with the drug sale. Smith is a different case where it's a murder case, and there's a videotape that shows up. Someone brings the police a videotape so that no policemen were there. It's apparently a secretive videotape of two defendants discussing how they murdered someone. I apologize for confusing those cases. And if you see Smith, how they go through it, that's what they did. They bifurcated it and said closely determined, yes, it's sufficient here because the officers testified. The officers weren't there. The officers testified. I know those two guys. Those are the defendant. I know those two guys. That's the defendant, Smith. And the court in Smith said that meets the standard for video. Then it went on to say, however, we don't meet these five standards for audio, and therefore it should not have been allowed. But here we don't have any audio. We only have video. And so my position is I'm not sure that this is the proper foundation here. And even Valen, as I said, goes on at 899 after talking about the five factors to say, absent the silent witness theory, this is what you need. You need someone with knowledge of what's there. And we have that here. There was a description of the defendant and a description by both Marsh and McCogney of the office of the defendant. What are the factors that the court needs to find in order to admit a tape of this nature? Well, I would say under Smith, the foundation is sufficient if there's a witness with personal knowledge of the filmed object testifying, yeah, that's the filmed object. And here we have the office of the defendant. If I were to say that's a film of Bob Langdon's hit number, I don't know when that tape was taken. I don't know how long the tape had been running before or after he was sitting there. How does that tape then become admissible simply because I can identify the person portraying it? Well, it's admissible, but it's only relevant to the extent that we know it's Bob Langdon and he's sitting at that desk in the second district court. You're right. It would have no relevance for the date. But here we don't have that problem because we have the people testifying that the money was taken over that weekend. And, indeed, there are two confessions. Again, I disagree with counsel. There are two confessions. He confessed to Office of Annan. That is on page 22. He confesses to taking a lot of money, but he never says I took this many dollars on this day. He doesn't say he took this many dollars. I believe that if you look at page 27 with Annan and look at page 91 with Cogney, you'll see that he did admit to taking it on this day. And, indeed, People's Exhibit 2, which is notes of the meeting with McCogney and Marsh and the other people, says that. It says he admitted taking the money, but he says it's $10. Well, the difference between 10 and 20 is obviously a discrepancy in the evidence, which is up to the trier of fact to determine that. The trier of fact here determined that. Which brings me to my next question. What would you submit our standard of review is here? The standard of review here, I think, is an abuse of discretion. Now, in the original briefs, defense cited the case Hallock v. Coastal Ridge, which is a hearsay case. It's not has to do with this. It has to do with, well, is that hearsay or is it not? It's just was it said out of court and is it being used to prove the statement? We cited a case, People v. Harris, which they said, well, it doesn't really say this. It says the admission of evidence is the discrepancy, the discretion of the trial judge. But we also cited to Valen, which is their case. And in Valen, again, if you look at page 899, first of all, they set out the standard, I think, at 898. And then at 899, when they do the ruling, they say the trial court's decision to admit the videotape was proper and not an abuse of discretion. So Valen, their case quite clearly sets forth some abuse of discretion. Now, in their reply brief, they bring up a case called People v. Safford, which is also distinguishable. Because if you look at Safford and a case from this court, which Safford relies upon, it's talking about the foundation necessary for the admission of an expert's testimony. And it says that quite clearly. It says expert testimony. This is what you need to show. And it's a question of law. And therefore, of course, a question of law will be de novo. But the only case that directly involves this that anybody cited is Valen, which the people cited in their brief, which says it's an abuse of discretion. Counsel, then would you submit that absent the surveillance tape, that the evidence was sufficient to convict the defendant? Yes, Your Honor. That was Your Honor's first question, and I hope to get to that, and I have. Yes, I would say that it was harmless. At page 4 of their reply brief, they indicate that an error is not harmless when there's a reasonable probability of acquittal absent the error. I think they cite a case called People v. E.H., and I accept that standard of law. But here, again, if you look at the trial judge's recount of the facts from 109 to 112, you'll see that at 110 to 111, after talking about the video and before again talking about it, the judge says, you know, the video is enough by itself without admissions. But we have admissions, and I find Marsh, McCogney, and Officer Annan to be very credible. And, indeed, we have, as I said, the two confessions here, one to Marsh, one to the group of people that McCogney testified at 91, and we have that People's Exhibit 2. So, Your Honors, we would, I guess, going from beginning to end, say that the standard here is abuse. Second of all, whether you use the Smith standard or whether you use, well, and Valen goes to that standard, too. It says absent the silent witness. Whether you use the silent witness standard or the Smith somewhat less standard, needing to show somewhat less, which is also mentioned in Valen, there's certainly enough here. The officer testified, I mean, Marsh and McCogney and the officer testified about this being the office, this being the defendant. It was quite clear. The officer testified, yeah, he hadn't used it before, but he testified that he had been instructed on its use, that he had went and tested it with, I think it was Marsh, maybe it was Cogney, walking past it and saying that when he walked past, the video went on, not just, you know, the camera, because he testifies later that the camera's always on. It's the video that started him stopping. He testifies to that. He testifies that when he left it there, it was in working order. When he came back later, before he looked at the tape on the 12th, it was working in the order that he had put it. McCogney testified that it was the defendant in the video. May I continue, Your Honor? Yes. McCogney testified that it was the video. So under either standard, there's sufficient evidence. And finally, even if you use the tougher standard for the people, even if you find that it's not in the use of discretion standard, any error here was harmless given the two confessions and Marsh's testimony that there was money there before, there was less money thereafter, and the trial judge's clear acceptance of the testimony from those witnesses. So the people would ask you to affirm the conviction and sentence here. Thank you, Your Honor. I have just one quick question. Yes, ma'am. From your reading of the record, is there any doubt in your mind that the trial court judge knew he was not viewing the actual original? From my reading of the record, Your Honor, I don't know that that comes up. Your opponent said that there was some testimony that, I think he said this, that there was some testimony that it was transferred from one to something else. I'm not sure if I got that. And quite frankly, that's what I'm asking you with your recollections. I don't recall there being testimony. Again, where that's included is at page 31, I think, of the common law record, which is a report written by Annen in which he says, I took this out of the hard drive, put it onto the tape, locked it in my drawer to be taken later to the evidence vault, but I don't think that was ever testified to or that piece was ever put. Now, there are things that are not on the record because the judge does make a reference to the suppression hearing because it's this matter of the foundations that had come up before. So whether or not that came up in there, I can't say. To that extent, it's obviously the appellant's duty to present a full record. Thank you. Thank you, Your Honor. Thank you. Mr. Hillcrest? Well, first of all, before I forget, I want to say that that case, Valin, that the State was relying upon, does have that abuse of discretion language. In that case, they had witnesses with personal knowledge of what they were attempting to bring in. If the State is correct and the DVD is an exact, or the tape is an exact copy of what was on the DVD, there's still a problem. They have the same problem with the DVD as they would with the VCR if, in fact, there's a gap there because if the defendant objects to it and on the basis that it's been altered, the State is required to rebut that. The only time this... All right, but is the argument then it was tampered with or it malfunctioned or does it make a difference when you come right down to what the State's responsibility is going to be? It depends on what the objection is. If counsel didn't object to this, the State wouldn't have had to rebut it, and it would just have come in. But, I mean, if we're using the original DVR and based upon Mr. Hoffman's representations from the record that this is exactly what I saw on the DVR, is that now... I mean, your strength right here is it was tampered with, but what if it's the original recording and we're bringing it in just as it was seen? Does it make a difference that it was tampered with, allegedly, or it's just simply a malfunction? Both of those. I mean, I'm not sure exactly... Wouldn't that go to wait? Pardon me? Wouldn't that go to wait? What? I'm sorry. If the tape has some, or the DVR has some inherent defect in it, or it has a gap in it, the motion detector, let's assume for the sake of argument, it was on a 15-second cycle, no movement for 15 seconds, the camera shuts off, the recording shuts off. And that's on the original. It is functioning properly. It is doing what it's supposed to do. The defense maintains there's a gap, therefore it's the state's burden to show it's not tampered with or that the machine was operating properly. The state brings in the witness and says, yes, the machine was operating properly, and when these circumstances occur, it will stop recording. And at some point, do they ever meet a foundational requirement under your scenario? I mean, I hear you saying if there's ever a gap, virtually, no matter how far back in the chain we go, the state could never get the tape admitted. If there's a gap and nobody had personal knowledge, because I think that's where it starts. This doesn't start up unless nobody had personal knowledge that could come in and verify that evidence. Then we start doing these things. It's not the surveillance tape that would be a different standard. Right. If there was a surveillance tape, this is not a photograph. This is not demonstrative evidence. So what would the state have to do to admit a tape that had a gap, that had a motion sensor, where the tape would stop recording? How would they ever, ever get that in? Or are we saying to all law enforcement, all surveillance tapes have to be recording at all times? You have to record the 30-second or the 3-hour gap in order to show that it's tamper-proof. Right. That seems somewhat unreasonable. It's not unreasonable if there is nobody that can testify that that is actually what happened, the recording was actually portrayed, actually what it was reported to. And there is an attack that can be made on the tape showing that it was chopped up. So you're telling me that any time there's a recording by a camera with a motion sensor, it is never going to be admissible because it will always have a gap? It will never have a gap unless somebody tampered with it. No, if there's a motion sensor, hold on a second. If there's a motion sensor, motion sensor triggers something and it begins to record, the motion stops, the camera stops, or the recording stops, and it starts up again, under your scenario, that tape would never be admissible because even if you go back to the original VDR recording, it's going to have a gap because it started when motion was present, it stopped when motion was not present, and it started again when motion was present. It's therefore met your standard to say, nope, the State has to show no gaps. They don't have to show gaps because there always will be gaps. But in other words, if the defendant is going to object on that ground, the State can easily say, well, the reason why there's a gap is because we set this monitor or this sensor to turn off at such a time, and that rebuts. Right, so then it goes to wait, no? No, when you are establishing the foundation, it does go back and forth foundation-wise. It doesn't go to the wait because it's a legal determination. The gatekeeper of the evidence is not the jury, it's the judge. So if you have an explanation as to why there's a gap in the tape, and the judge is satisfied with that explanation, and then he admits the evidence, then what is the standard of redeem for us? It's a no vote. If he's attacking the foundation. If he made the determination that he was satisfied with the explanation. Because it's a rule of law. It is not something that the judge. What is a rule of law? A rule of law is either this piece of evidence has a foundation or it doesn't. There's no in-between. And that's why if you challenge it, and it goes up in appeal, that's why it's a review de novo. We're not looking at the abuse of discretion or what the judge said. Either it is or it isn't, it isn't. And a judge has to make that decision. So do we need, before we start widely using DVR recordings, we need a reliability hearing to determine the scientific reliability of DVRs? If the defense can come up with something that brings that process. But you're not suggesting that right now. Suggesting what? Scientific reliability hearings to determine. Oh, absolutely not. I think this evidence, this challenge in this case could have been easily rebutted by the state. But they didn't have what it took to rebut it. Because they had this tape all messed up. And so they had to explain why, and they couldn't. But didn't the judge say he was satisfied with their explanation? Yes. So are we second-guessing then what the judge listened to these witnesses testify about? What I saw on the monitor, what's on the tape, and how the motion detector works, and how they turn on and turn off, and if the court was satisfied with that, and then admitted this tape, that's abuse of discretion. So we're relying on the judge's factual findings. I can't agree with that. To determine that it's reliable. I mean, he made the determination that that tape was reliable. Then why is the abuse of discretion standard not used in these situations? That would be the only thing I could say to you, because it is a de novo review for specifically that reason. The judge has to use his brain to make a decision. The judge has to use decisions in here to make a ruling on a question of law. He's still using his discretion. But this is a rule of law that he has to cite, and the rule of law says it is or it is not. And that's why this court reviews that de novo. This court will have to decide, is that, was the foundation set by the state or wasn't it? And that's what will decide this case. All right. As far as that issue, not the reasonable doubt issue, of course. All right. Thank you, counsel, for your arguments. The case will be taken under advice.